Steven R. Sumsion (#8317)
**SUMSION BUSINESS LAW**
1800 Novell Place, 5th Floor
Provo, Utah 84606
Tel: (801) 375-2830
Email: steve@businesslawutah.com
*Attorney for Plaintiff*

**WARNING: If you do not respond to this document within applicable time limits, judgment could be entered against you as requested.**

**UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **JAMES FINN,** an individual,<br><br>Plaintiff,<br><br>v.<br><br>**DEVIN ELLIOT,** an individual; **NIINA FUJIOKA**, an individual; **JXN, LLC d/b/a NEW DAO JONES**, a Washington limited liability company,<br><br>Defendants. | **COMPLAINT**<br><br>**TRIAL BY JURY DEMANDED**<br><br>Civil No. ___________<br><br>Judge: _____________ |

Plaintiff James Finn ("Plaintiff"), by and through counsel, hereby complains against Defendants Devin Elliot ("Elliot"), Niina Fujioka ("Fujioka"), and JXN, LLC d/b/a New DAO Jones ("JXN") (collectively, "Defendants") as follows.

## NATURE OF THE ACTION

This action arises from Defendants' fraudulent scheme to induce Plaintiff and other investors to invest in the purported New DAO Jones Fund ("NDJ Fund") through false representations regarding the Fund's existence, performance, management, and profitability. Defendants represented—among other things—that the NDJ Fund was a professionally managed cryptocurrency investment fund that generated consistent returns, employed sophisticated risk-

management strategies, and allowed investors to redeem their funds on short notice. Plaintiff relied on these representations and invested funds with Defendants.

Upon information and belief, Defendants' representations were materially false and misleading. Defendants failed to provide promised transparency, reporting, and access to investor funds, and communications with investors ultimately ceased altogether. Furthermore, the entity purportedly operating and managing the NDJ Fund—JXN, LLC d/b/a New DAO Jones ("JXN")—was administratively dissolved without notice to Plaintiff or other investors. Defendant concealed this material fact while continuing to retain investor funds and failing to account for their disposition.

The disappearance of investor funds, lack of verifiable evidence regarding the NDJ Fund's operations or assets, lack of communication, and undisclosed dissolution of the management entity support—among other justified relief—an award of treble damages and attorney fees for a reckless or intentional violation of the Utah Uniform Securities Act pursuant to Utah Code Ann. §61-1-22.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff James Finn is an individual domiciled in Puerto Rico.
2. Upon information and belief, Defendant Devin Elliot is an individual domiciled in Utah.
3. Upon information and belief, Defendant Niina Fujioka is an individual domiciled in Washington.
4. Defendant JXN, LLC d/b/a New DAO Jones is a Washington limited liability company that was administratively dissolved in May 2025.

5. Upon information and belief, Defendants Devin Elliot and Niina Fujioka were members, managers, governors, and/or persons exercising control over Defendant JXN, LLC d/b/a New DAO Jones for all time periods relevant to the allegations set forth herein.
6. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 78aa(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).
7. Venue is proper pursuant to 28 U.S. Code § 1391(b).
8. The amount in controversy in this action is no less than $150,000.00.

## GENERAL ALLEGATIONS

***Background and Execution of Investment Agreement***

9. In 2021, Plaintiff was made aware of a potential investment opportunity being solicited by Elliot—namely, the NDJ Fund.
10. During several phone calls between Plaintiff and Elliot, Elliot verbally represented to Plaintiff that the NDJ Fund—among other things—employed sophisticated risk-management techniques, delivered consistent weekly earnings, and had earned profit in every quarter of its existence. Elliot further represented that investors could redeem their capital within 24 hours at any time, and that the NDJ Fund was structured to increase returns while minimizing risk.
11. In September 2021, relying upon the representations made by Elliot, Plaintiff entered into an investment agreement with Elliot ("the Investment Agreement"). *See* **Exhibit A**.
12. On September 9th, 2021, in accordance with the Investment Agreement, Plaintiff made an investment of $24,999.99 and 0.527 Bitcoin ("BTC"), which at the time made for a total investment of approximately $50,000.00 altogether.

13. Section 2 of the Investment Agreement provides that "[t]he Return on Investment (the "ROI") shall be calculated on a monthly basis" and that "[t]he distribution of the ROI shall be split 50/50 between the Investor and the Fund." *Id* at § 2.

***Representations Made to Investors***

14. On November 3rd, 2021, after waiting for reports on the fund's performance for almost two months, Plaintiff received an email from Niina Fujioka, a representative of JXN acting as the Fund Administrator (**Exhibit B**), with attachments labeled as "NDJ - Q3 2021 Earnings and Market Report " (the "Q3 Report"; **Exhibit C**) and "NDJ - Fund Overview" (the "Fund Overview"; **Exhibit D**). The former purported to be a summary of the performance of the NDJ Fund through the third quarter of 2021, and the latter purported to be an official overview of the NDJ Fund.

15. The Q3 Report—among other things—made representations about the NDJ Fund's ongoing performance and projected growth, namely that the NDJ Fund experienced "consistent earnings of 3% week over week", "quickly scale[d] [its] assets under management (AUM) to $900,000 by the end of Q3", and "forecast[ed] growing [its] AUM to $1 million by the end of October and $10 million by the end of 2021." **Exhibit C** at p. 4.

16. The Fund Overview included representations that the fund delivered "consistent weekly earnings of 3%" and had "earned profit in every quarter of its existence." **Exhibit D** at pp. 32, 28. It explained that the fund was structured to "increas[e] your returns while minimizing risk", and that "rigorous planning and back testing [their] team conducted through the first half of 2021" was available on their website. *Id* at pp. 32–33. It also clearly states, "We don't believe in locking up your money", and includes a guarantee

that investors "may redeem any or all [of their] investment capital and receive funds [...] within 24 hours." *Id* at p. 20.

17. The Q3 Report and the Fund Overview, although not given to Plaintiff before he made his investment, represent the substance of the original verbal representations Elliot made to Plaintiff regarding the NDJ Fund's existence, performance, management, and profitability.

18. Additionally included in the aforementioned email was a promise that JXN would "be producing quarterly reports in addition to providing updates on the depositor app development as they come." **Exhibit B**.

***Cessation of All Communication***

19. The November 3rd, 2021 email was the last communication Plaintiff received from any representative of JXN.

20. Since the execution of the Investment Agreement, no ROI calculations or distributions have ever been received by Plaintiff in accordance with Section 2.

21. After the November 3rd, 2021 email, no further quarterly reports or updates on the depositor app development were ever received by Plaintiff.

22. Plaintiff was never at any time directed to a specific JXN website, and even upon his own search efforts has been unable to locate one.

23. During the time periods following the execution of the Investment Agreement, Plaintiff was engaged in substantial professional and business obligations and reasonably relied upon Defendants to administer the investment and provide periodic reports concerning its status. In December 2024, Plaintiff undertook a review of his investment holdings and

discovered that Defendants had failed to provide the expected reports, accountings, returns, and distributions.

24. After making this discovery, Plaintiff made numerous attempts to contact Defendants regarding the state of the fund and his ability to redeem his investment capital, but was not met with any response.

***Further Misconduct, Misrepresentations, and Communication Failures***

25. On May 3rd, 2025, JXN was administratively dissolved without any notice given to Plaintiff.

26. On April 8th, 2026, Plaintiff made contact with Elliot via X, formerly known as Twitter, regarding Elliot's breach of the Investment Agreement. *See* **Exhibit E**.

27. During this social media exchange, Elliot acknowledged that both he and Plaintiff "signed the letters" and assured Plaintiff that he was "still working on it." *Id.*

28. On May 18th, 2026, Plaintiff served Elliot with a letter demanding a full accounting of the NDJ Fund's assets, trades, gains, losses, fees deducted, and current holdings, as well as remittance of his capital investment. This letter was served at both Elliot's last-known address and his email address, but Plaintiff did not receive a response.

29. Since the social media exchange on April 8th, 2026, Plaintiff has had no contact with Defendants.

30. As a direct and proximate result of Defendants' misconduct, Plaintiff has been damaged in an amount of no less than his lost capital investment of approximately $50,000.00.

31. Upon information and belief, Defendants are not and have never been properly licensed to transact business in this state as a broker-dealer or agent under the Utah Uniform Securities Act.

32. Since the execution of the Investment Agreement, Plaintiff's originally invested 0.527 BTC has appreciated substantially in value.

***The Purported NDJ Fund Interests Constituted Securities***

33. Section 3(a)(10) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78c(a)(10), defines a "security" as—among other things—"any [...] investment contract [...]."

34. In *SEC v. W. J. Howey Co.*, 328 U.S. 293, 66 S. Ct. 1100, 90 L. Ed. 1244, 1 EXC 179 (1946), the Supreme Court clarified that "For purposes of the Securities Act, an investment contract (undefined by the Act) means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise."

35. In the context of the NDJ Fund, investors, including Plaintiff, provided money or other valuable consideration to Defendants. *See* **Exhibit A**.

36. These investor funds were pooled in a common enterprise—or were at least represented to have been. *See* **Exhibit D** at pp. 8–10.

37. Investors were led to expect profits from their investments. *See Id* at pp. 28, 32.

38. Any anticipated profits were expected to result primarily or entirely from Defendants' managerial and entrepreneurial efforts. *See Id* at p. 29.

39. Defendants represented that they alone—or in this case either the blockchain software or the NDJ Fund's purported "portfolio managers"—would conduct all trading and portfolio-management activities on behalf of investors. *Id* at p. 29.

40. As such, the interests sold by Defendants in the NDJ Fund constituted investment contracts, and therefore also constituted securities within the meaning of the Securities Exchange Act of 1934.

## FIRST CAUSE OF ACTION

**Violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5**
**(15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5)**

41. Plaintiff incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

42. Upon information and belief, Defendants, in connection with the offer, sale, and management of investment interests in the NDJ Fund, made materially false and misleading statements and omitted critical material facts concerning the existence and operation of the fund, the profitability and historical performance of the fund, the custody and security of investor assets, and investors' ability to redeem invested capital. The facts supporting this belief include the disappearance of investor funds, cessation of communications, lack of verifiable evidence regarding the fund's operations or assets, and undisclosed dissolution of the management entity.

43. The specific misleading statements and omissions accompanied by the reason or reasons why they are misleading, include but are not limited to the following:

   a. Defendants—first verbally and then later in writing—represented to Plaintiff that the NDJ Fund delivered "consistent weekly earnings of 3%" and had "earned profit in every quarter of its existence." **Exhibit D** at pp. 32, 28.

      i. The foregoing statements were materially false and misleading because the fund's performance following Plaintiff's investment did not reflect profitability and success. In addition to Defendants' complete

disappearance after Plaintiff's money was safely in their hands, Defendants failed to provide any evidence substantiating their claims about the existence of the fund or the fund's prior success, and further failed to provide the expected reports, accountings, returns, and distributions following Plaintiff's investment.

b. Defendants—first verbally and then later in writing—represented to Plaintiff that the NDJ Fund was structured to "increas[e] your returns while minimizing risk", and that "rigorous planning and back testing [their] team conducted through the first half of 2021" was available on their website. *Id* at pp. 32–33.

   i. The foregoing statements were materially false and misleading because no such website exists, and the fund's performance following Plaintiff's investment did not reflect profitability and success. In addition to Defendants' complete disappearance after Plaintiff's money was safely in their hands, Defendants failed to provide any evidence substantiating his claims about the existence of the fund or the fund's prior success, and further failed to provide the expected reports, accountings, returns, and distributions following Plaintiff's investment.

c. Defendants—first verbally and then later in writing—represented to Plaintiff that they "[didn't] believe in locking up [Plaintiff's] money", and includes a guarantee that investors "may redeem any or all [of their] investment capital and receive funds [...] within 24 hours." *Id* at p. 20.

i. The foregoing statements were materially false and misleading because Defendants *did* lock up Plaintiff's money and Plaintiff's numerous attempts to redeem his investment capital were either ignored or denied.

d. Defendants—first verbally and then later in writing—represented to Plaintiff that the NDJ Fund had $900,000 of assets under management (AUM) by the end of the third quarter of 2021. **Exhibit C** at p. 4.

i. The foregoing statement was materially false and misleading because the fund's performance following Plaintiff's investment did not reflect profitability and success. In addition to Defendants' complete disappearance after Plaintiff's money was safely in their hands, Defendants failed to provide any evidence substantiating their claims about the existence of the fund, the assets managed by the fund, or the fund's prior success, and further failed to provide the expected reports, accountings, returns, and distributions following Plaintiff's investment.

e. Defendants—first verbally and then later in writing—represented to Plaintiff that the NDJ Fund "forecast[ed] growing [its] AUM to $1 million by the end of October and $10 million by the end of 2021." *Id* at p. 4.

i. The foregoing statement was materially false and misleading because the fund's performance following Plaintiff's investment did not reflect profitability and success. In addition to Defendants' complete disappearance after Plaintiff's money was safely in his hands, Defendants failed to provide any evidence substantiating their claims about the existence of the fund, the assets managed by the fund, or the fund's prior

success, and further failed to provide the expected reports, accountings, returns, and distributions following Plaintiff's investment.

f. When JXN was administratively dissolved in May 2025, Defendants failed to disclose its dissolution to Plaintiff and further failed to account for the disposition of Plaintiff's invested funds.

i. The foregoing omission was materially misleading because a reasonable investor would have considered the dissolution of the fund's management entity, the inability to redeem invested capital, the lack of substantiation for claimed assets and performance, and the status of investor funds important in deciding whether to invest, remain invested, or seek redemption.

44. Upon information and belief, Defendants knew that these representations and omissions were false and misleading when made. This is demonstrated by Defendants' complete cessation of communication with Plaintiff following Plaintiff's investment and provided absolutely no reports, accountings, returns, or distributions to Plaintiff in connection with the NDJ Fund aside from the generalized, broadly sweeping, and unsupported claims about the Fund's success made in the Fund Overview and the Q3 Report.

45. Upon information and belief, Defendants demonstrated scienter by intentionally making these representations and omissions in an attempt to fraudulently induce Plaintiff into investing in the NDJ Fund. The disappearance of investor funds, cessation of communications, lack of verifiable evidence regarding the fund's operations or assets, and undisclosed dissolution of the management entity give rise to a strong inference that Defendant acted in such a state of mind.

46. Plaintiff relied upon Defendants' representations and omissions in deciding to invest funds in the NDJ Fund.
47. Plaintiff subsequently lost and has yet to recover his capital investment.
48. Defendants' conduct constituted the use of a device, scheme, or artifice to defraud and operated as a fraud and deceit upon Plaintiff in connection with the purchase or sale of securities.
49. As a direct and proximate result of Defendants' violations of Section 10(b) and Rule 10b-5, Plaintiff suffered damages in at least the amount of his lost capital investment.
50. Plaintiff is therefore entitled to recover all damages permitted by law, together with interest, costs, and such other relief as the Court deems just.

## **SECOND CAUSE OF ACTION**
### **Violations of the Utah Uniform Securities Act**

**(Count 1 – Fraud Unlawful; Utah Code Ann. §§ 61-1-1(2))**

51. Plaintiff incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein, and specifically re-asserts here the allegations contained in paragraphs 39–48.
52. As a direct and proximate result of Defendant’s violation of Utah Code Ann. § 61-1-1(2), Plaintiff has suffered losses in at least the amount of his lost capital investment.
53. Upon information and belief, this violation was reckless or intentional because Defendants knew that the aforementioned representations and omissions were false and misleading when made.

54. Plaintiff is therefore entitled to recover all damages permitted by law, including an award of treble damages pursuant to Utah Code Ann. §61-1-22, together with interest, costs, and such other relief as the Court deems just.

**(Count 2 – Acting as an Unlicensed Agent/Broker-Dealer; Utah Code Ann. §§ 61-1-3(1) – Against Defendants Devin Elliot and Niina Fujioka)**

55. Plaintiff incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

56. Defendants Devin Elliot and Niina Fujioka, as members, managers, governors, and/or persons exercising control over JXN, engaged in business as broker-dealers or agents who effected or attempted to effect the sales of securities.

57. Upon information and belief, these Defendants are not and have never been properly licensed to transact business in this state as broker-dealers or agents under the Utah Uniform Securities Act.

58. As a result of Defendants' violation of Utah Code Ann. § 61-1-3(1), Plaintiff has suffered damages in at least the amount of his lost capital investment.

59. Upon information and belief, Defendants' violation was reckless or intentional because they knew they needed to be properly licensed in order to transact business in this state as broker-dealers or agents.

60. Plaintiff is entitled to recover all damages permitted by law, including an award of treble damages pursuant to Utah Code Ann. §61-1-22, together with interest, costs, and such other relief as the Court deems just.

**THIRD CAUSE OF ACTION**
**Fraudulent Misrepresentation**

61. Plaintiff incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

62. As previously mentioned, Defendants made numerous representations to Plaintiff concerning presently existing material facts regarding the NDJ Fund, including but not limited to:

   a. that the NDJ Fund delivered consistent weekly earnings of 3% and had earned profit in every quarter of its existence;

   b. that the NDJ Fund was structured to increase returns while minimizing risk and that rigorous planning and back testing supporting the Fund's strategy existed and was available for review;

   c. that investors could redeem any or all invested capital and receive funds within twenty-four hours;

   d. that the NDJ Fund had approximately $900,000 in assets under management by the end of the third quarter of 2021; and

   e. that the NDJ Fund was a legitimate, operating investment fund with assets under management and a successful track record.

63. The foregoing representations concerned presently existing material facts because they related to the existence, operation, performance, assets, liquidity, and investment characteristics of the NDJ Fund.

64. The foregoing representations were false when made. Upon information and belief, the NDJ Fund did not possess the represented assets, performance history, liquidity, or operational characteristics represented by Defendants. Defendants subsequently failed to

provide any documentation, accountings, reports, distributions, or other evidence substantiating the existence, assets, operations, or historical performance of the fund.

65. Alternatively, Defendants made the foregoing representations recklessly, with insufficient knowledge upon which to base such representations, while presenting them to Plaintiff as established facts.

66. Defendants knew the representations were false, or acted recklessly with conscious disregard for their truth or falsity.

67. Defendants made the foregoing representations for the purpose of inducing Plaintiff to invest capital in the NDJ Fund and to refrain from investing those funds elsewhere.

68. Plaintiff was unaware of the falsity of Defendants' representations and reasonably relied upon them in evaluating the investment opportunity and deciding to invest in the NDJ Fund.

69. In reliance upon Defendants' representations, Plaintiff invested capital in the NDJ Fund.

70. Plaintiff's reliance was reasonable because Defendants presented themselves as investment managers, provided written investment materials, made specific representations concerning historical performance and assets under management, and represented that investor capital could be redeemed on demand.

71. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff invested funds in the NDJ Fund, was unable to redeem those funds, lost his invested capital, and suffered damages in an amount to be proven at trial, but not less than the amount of his lost investment, together with consequential damages, interest, costs, and any other relief permitted by law.

**<u>FOURTH CAUSE OF ACTION</u>**
**Fraudulent Nondisclosure**

72. Plaintiff incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

73. Defendants owed Plaintiff a duty to communicate material information concerning the status, management, operation, and safety of Plaintiff's investment and the NDJ Fund. Having elected to solicit Plaintiff's investment, provide information regarding the fund, and maintain an ongoing investment relationship with Plaintiff, Defendants had a duty to disclose material facts necessary to prevent their affirmative statements from being misleading.

74. Defendants knew material information that they failed to disclose to Plaintiff, including but not limited to:

    a. that JXN, the entity represented to be managing the NDJ Fund, had been administratively dissolved;

    b. that investor funds were not available for redemption as represented;

    c. that Defendants lacked verifiable support for the fund's represented assets under management, historical performance, and profitability; and

    d. that material facts existed concerning the status and disposition of Plaintiff's invested funds that were not disclosed to Plaintiff.

75. Defendants failed to disclose the foregoing information to Plaintiff despite possessing knowledge of such information.

76. The omitted information was material. A reasonable investor would have considered the dissolution of the fund's management entity, the inability to redeem invested capital, the

lack of substantiation for claimed assets and performance, and the status of investor funds important in deciding whether to invest, remain invested, or seek redemption.

77. Defendants' omissions rendered their affirmative representations concerning the Fund's performance, assets, management, liquidity, and safety materially misleading.

78. Plaintiff did not know the omitted information and could not reasonably have discovered it through ordinary diligence.

79. Had Defendants disclosed the omitted information, Plaintiff would not have invested in the NDJ Fund and/or would have taken immediate steps to protect and recover his investment.

80. As a direct and proximate result of Defendants' fraudulent nondisclosure, Plaintiff lost his invested capital and suffered damages in an amount to be proven at trial, but not less than the amount of his lost investment, together with consequential damages, interest, costs, and any other relief permitted by law.

## FIFTH CAUSE OF ACTION
**Conversion**

81. Plaintiff incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

82. Per the promises Defendants made to Plaintiff—both verbal and written—Plaintiff had a right to retrieve his approximately $50,000.00 capital investment within 24 hours of request and repeatedly attempted to do so.

83. Defendant either ignored or failed to comply with all of Plaintiff's requests.

84. As such, Defendants unlawfully and intentionally exercised dominion and control over Plaintiff's investment by withholding and refusing to return it to Plaintiff even after numerous attempts to retrieve it in accordance with Defendants' promises.

85. Defendants' conduct in retaining the investment was unauthorized because it denied Plaintiff with lawful access to his own investment funds in accordance with the promises made to Plaintiff by Defendants, both verbal and written, and both before and after the investment was effectuated.

86. As a direct and proximate result of Defendants' unlawful and intentional exercise of dominion and control over Plaintiff's investment, Plaintiff has suffered losses in at least the amount of his lost capital investment.

87. Plaintiff is entitled to recover all damages permitted by law, together with interest, costs, and such other relief as the Court deems just.

## SIXTH CAUSE OF ACTION
**Breach of Fiduciary Duty**

88. Plaintiff incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

89. As either the purported managing entity of the NDJ Fund, or a manager, governor, and/or person exercising control over JXN, Defendants had a fiduciary duty to Plaintiff to keep him informed regarding the state and performance of the fund and Plaintiff's capital investment in it.

90. Plaintiff trusted Defendants to manage the fund and his capital investment in it responsibly, as evidenced by his fulfillment of his obligations set forth in the Investment Agreement.

91. Defendants undermined this trust and loyalty by failing to disclose reports detailing the state of the fund to Plaintiff, as had been agreed to.

92. Defendants further undermined this trust and loyalty by failing to provide the promised distributions of the ROI to Plaintiff.

93. Defendants breached their fiduciary duty even further by failing to inform Plaintiff when the entity managing the fund, JXN, had been administratively dissolved.

94. As a direct and proximate result of Defendants' breach of their fiduciary duty, Plaintiff has suffered damages in at least the amount of his lost capital investment.

95. Plaintiff is entitled to recover all damages permitted by law, together with interest, costs, and such other relief as the Court deems just.

## SEVENTH CAUSE OF ACTION
**Breach of the Investment Agreement**
**(Against Defendants Devin Elliot and JXN, LLC)**

96. Plaintiff incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

97. In September 2021, Plaintiff and Defendants Elliot and JXN entered into a valid and enforceable Investment Agreement.

98. Plaintiff performed all of his obligations under the Investment Agreement.

99. Section 2 of the Investment Agreement provides that "[t]he Return on Investment (the "ROI") shall be calculated on a monthly basis" and that "[t]he distribution of the ROI shall be split 50/50 between the Investor and the Fund." **Exhibit A** at § 2.

100. Despite Plaintiff's performance under the agreement and his numerous attempts to contact Defendants with inquiries as to the RIO calculations and distributions,

Defendants breached the agreement by failing to provide any calculations or distributions whatsoever in connection with Plaintiff's investment in the NDJ Fund.

101. Defendants' breach resulted in losses for Plaintiff in the amount of the ROI Plaintiff was entitled to receive.

102. Plaintiff is therefore entitled to an award of damages from Defendants for their breach of the Investment Agreement in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Against Defendants Devin Elliot and JXN, LLC)**

103. Plaintiff incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

104. The Investment Agreement between the parties was a valid and enforceable contract.

105. Under Utah law, every valid contract includes an implied covenant of good faith and fair dealing, which requires that the parties act honestly and fairly toward each other to ensure that neither party undermines the contractual agreement or its intended benefits.

106. Plaintiff fulfilled his contractual obligations by making the initial investment of approximately $50,000.00.

107. Despite Plaintiff's performance, Defendants breached the implied covenant of good faith and fair dealing by intentionally failing to provide monthly ROI calculations and distributions.

108. Plaintiff had justified expectations under the Investment Agreement that he would receive monthly ROI calculations and distributions.

109. Defendants' intentional failure to fulfill their obligations directly resulted in losses for Plaintiff in the amount of the ROI Plaintiff was entitled to receive.

110. Plaintiff is therefore entitled to an award of damages from Defendants for their breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
**Unjust Enrichment**

111. Plaintiff incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

112. Plaintiff made an approximately $50,000.00 initial investment into the NDJ Fund in accordance with the Investment Agreement. Defendants were required to provide Plaintiff with monthly ROI calculations and distributions under the Investment Agreement and additionally promised Plaintiff that his investment would be completely redeemable at any time within 24 hours of a request.

113. Because of Defendants' failure to provide Plaintiff with any ROI calculations or distributions, as well as his failure to return Plaintiff's investment to him upon Plaintiff's request, Defendants have knowingly retained a monetary benefit.

114. It would be inequitable to allow Defendants to retain the monetary benefit of Plaintiff's investment and promised ROI distributions without providing Plaintiff with adequate compensation.

115. Plaintiff therefore seeks an award of no less than $50,000.00, or as deemed proper by the Court.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A. On the first cause of action for Violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, an award of all damages recoverable under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, including compensatory damages in an amount to be proven at trial; rescission and restitution where appropriate; prejudgment and post-judgment interest; costs of suit; and such other legal and equitable relief as the Court deems just and proper;

B. On the second cause of action for violation of the Utah Uniform Securities Act,

   a. For Count 1, recission of the securities transactions at issue and a full recovery of all consideration paid, together with interest, statutory damages where authorized—including treble damages pursuant to Utah Code Ann. §61-1-22, attorneys' fees and costs where authorized by law, and such other relief as the Court deems just and proper,

   b. For Count 2, rescission of the unlawful transactions, restitution of all funds paid, disgorgement of all commissions, fees, and compensation received as a result of the unlawful conduct, together with interest, costs, and any other relief authorized

by the Utah Uniform Securities Act, which includes but is not limited to an award of treble damages pursuant to Utah Code Ann. §61-1-22;

C. On the third cause of action for Fraudulent Misrepresentation, an award of compensatory damages, consequential damages, rescission and restitution where appropriate, punitive damages in an amount sufficient to punish and deter Defendant's willful misconduct, prejudgment and post-judgment interest, costs of suit, and such further relief as the Court deems just and proper;

D. On the fourth cause of action for Fraudulent Nondisclosure, an award of compensatory damages, consequential damages, rescission and restitution where appropriate, punitive damages, prejudgment and post-judgment interest, costs of suit, and all other relief available at law or in equity;

E. On the fifth cause of action for Conversion, an award of the full value of the converted property, damages for loss of use and consequential losses, punitive damages, prejudgment and post-judgment interest, costs of suit, and such other relief as the Court deems just and proper;

F. On the sixth cause of action for Breach of Fiduciary Duty, an award of compensatory damages; imposition of a constructive trust over wrongfully obtained funds and property; an order of an accounting and disgorgement of all profits, fees, commissions, and benefits obtained through Defendant's breach; punitive damages where permitted; prejudgment and post-judgment interest, costs, and such further equitable relief as the Court deems just and proper;

G. On the seventh cause of action for Breach of the Investment Agreement, an award of all damages resulting from Defendant's breach of contract, including expectation damages

and consequential damages where recoverable; an order requiring specific performance where appropriate; prejudgment and post-judgment interest; attorneys' fees where authorized; costs of suit; and such other relief as the Court deems just and proper;

H. On the eighth cause of action for Breach of the Implied Covenant of Good Faith and Fair Dealing, an award of all damages caused by Defendant's breach of the implied covenant of good faith and fair dealing, including consequential damages where recoverable, together with prejudgment and post-judgment interest; attorneys' fees where authorized by law or contract; costs of suit; and such other relief as the Court deems just and proper;

I. On the ninth cause of action for Unjust Enrichment, an award of restitution of all benefits unjustly retained by Defendant; an order requiring disgorgement of all ill-gotten gains; imposition of a constructive trust over wrongfully obtained funds and property; an order for an accounting; prejudgment and post-judgment interest, costs, and such other equitable relief as the Court deems just and proper.

K. For such other and further relief as this Court deems just and proper.

DATED: This 1st day of July, 2026.

**SUMSION BUSINESS LAW**
*/s/ Steven R. Sumsion*
Steven R. Sumsion
*Attorney for Plaintiff*